## Shepherd et al. v. Halsall.

## Halsall v. Steele et al.

Nov. 5, 1941.

J. H. Asher for appellants Shepherds and appellees Steeles.

M. C. Begley and C. W. Hoskins for appellee Ellen Halsall.

OPINION OF THE COURT BY JUDGE CAMMACK—Reversing.

D. E. Steele owns a three-fifths undivided interest in a 250 acre tract of land in Leslie County. His brother, Ferdinand, and his sister, Mrs. Nannie Shepherd, each own a one-fifth interest in the tract. Mrs. Shepherd and her husband, Elihu, live on the land. Ferdinand, an unmarried man some 50 years of age, makes his home with them. Ellen Halsall, a nurse, worked in Leslie County for some 10 years prior to the time she left there about 1935. She and Elihu Shepherd worked at the same hospital in Hyden. Miss Halsall seems to have had relationships of one character or another with members of the Shepherd family for several years. In 1931 she loaned $200 to a son of Mrs. Shepherd and took a note for that amount with Mr. and Mrs. Shepherd as sureties. This note was never paid. Without the knowledge of D. E. Steele, Ellen and the Shepherds entered into an arrangement under which she erected a log house near the Shepherds' home on the land in question. It seems that Miss Halsall had reasons for not wanting it known that she was building a house so she arranged for a daughter-in-law of Mrs. Shepherd to represent her during a part of the construction period. However, Miss Halsall's brother helped complete the house. Ferdinand and members of the Shepherd family worked on it. The stone for the foundation, the logs and certain other materials came from the Steele and Shepherd land. Miss Halsall lived in the house until she left the community and thereafter she rented it for a short time. Shortly after the last tenant moved out the Shepherds took possession of the house. Miss Halsall instituted this proceeding to have them enjoined from doing so. A temporary restraining order was issued in her favor but the other parties seem to have given it little concern.

In an amended petition in which Ferdinand was brought into the picture Miss Halsall set forth that she had purchased the lot on which the house was built, and to which she had referred in her original petition, from

the Shepherds for the sum of $200, and that she had spent $1,250 on the house; $50 on a poultry house; $150 for a well; and $100 for fencing and building a road; making a total outlay of $1,750. She set forth further that, while she had obtained no deed to the property, she was placed in possession of it; that the Shepherds and Ferdinand Steele saw her making improvements and made no protest or claim against her; and that upon their refusal to execute a deed to her she was entitled to a lien to secure the payment of the money expended by her. The Steeles and Shepherds answered denying Miss Halsall's claims to the property and setting up their claims of ownership, and setting forth further that Miss Halsall had unlawfully and illegally entered upon their land and was claiming a portion of it. They asked that they be adjudged ownership. The issues were joined after further pleadings were filed in which the Shepherds set up a counterclaim of $800 for materials used in construction of the house. Both sides offered proof, much of which was irrelevant, in support of their contentions.

In brief, Miss Halsall testified that she got the lot upon which she built the house from Nannie Shepherd and that Nannie said that, while the land which had originally belonged to her mother had not been divided between the heirs, "she knew it would be all right and that they would let me build on it"; the Shepherds picked out the site; they had refused to execute a deed to her; and that she considered the $200 unpaid note adequate payment for the lot. In substance, the testimony on the other side is that, while Ferdinand worked on the house, he knew nothing of Miss Halsall's claim to the lot, but thought that the house was being built for a daughter-in-law of the Shepherds. Mrs. Shepherd said that the first she heard of the building was in 1933 or 1934 when her husband approached her about it, saying that Miss Halsall wanted to build a house and that if anything ever happened to her she would probably give it to one of the children; and that she said, as far as she was concerned, it was all right, but that she did not agree to a sale because she only owned a one-fifth interest in the property from which the lot was carved.

After the case was submitted the order of submismission was set aside and the chancellor heard oral testimony from Mrs. Shepherd and Ferdinand. There-

after a judgment was entered in the cause, one paragraph of which reads as follows:

"Before the institution of this action the Plaintiff and the Defendant, Nannie Shepherd, and her husband, Elihu Shepherd made an arrangement whereby the Plaintiff was to have erected a Dwelling house on this Boundary. The Defendant Nannie Shepherd and her immediate family seems to have had a charge of the construction of the house. The Plaintiff seems to have had her check book ready at all times and to have paid all the bills. Ferdinand Steele performed labor in the erection of the house. The evidence does not disclose that D. E. Steele had any knowledge of the arrangement and as to Ferdinand Steele he gave his evidence in Open Court after the original order of submission was set aside and the court is of the opinion that he did not have and does not have sufficient business acumen and sufficient intelligence to justify awarding a lien against his interest. There is no evidence in the Record that the value of the land has been improved to any certain extent by reason of the construction but the evidence shows that the Plaintiff expended more than seventeen hundred and Fifty Dollars the amount stated in her petition and this money was expended with the active participation on the part of the family of Nannie and Elihu Shepherd. There was no writing which can be specifically enforced and if the petition of the Plaintiff be dismissed then the defendants will get the residence which she constructed and she will not get anything. Since the land is undivided the court is of the opinion that she should be given a lien against the one-fifth undivided interest of the Defendant, Nannie Shepherd."

The Shepherds are appealing from the part of the judgment which directs that Miss Halsall be given a lien against their one-fifth undivided interest in the 250 acre tract of land, and Miss Halsall is appealing from that part of it which denied her any relief against D. E. and Ferdinand. The appeals have been consolidated.

Having reached the conclusion that there must be another trial of this cause for reasons hereinafter set forth, we deem it unnecessary to attempt to analyze carefully the proof as to whether or not Miss Halsall

sustained the burden of showing a parol agreement on the part of the Shepherds to sell the lot to her. Unless she meets that burden she is entitled to no equitable relief. Vogel v. Massey, 256 Ky. 419, 76 S. W. (2d) 257. As said in the case of McMillen v. Bailey, 269 Ky. 194, 106 S. W. (2d) 638, the one claiming under a parol agreement to sell land must produce facts showing that the circumstances under which he was induced to make the improvements were such as to create color of title in him and to inspire the bona fide belief that he was to become the eventual owner of the land occupied by him when the improvements were made.

The judgment is correct in denying relief against D. E. Steele, since there is no showing that he knew of the conditions under which Miss Halsall built the house.

It is erroneous in so far as relieving Ferdinand is concerned, because there is neither pleading nor proof as to his inability to transact his own business. We have read his testimony given in open court after the order of submission was set aside and it seems to us that he testified in as clear and straightforward a manner as any other witness. True it is that he said that he thought the house was being built for a daughter-in-law of the Shepherds, but there is other proof, as well as circumstances, which indicate that he stood by and saw Miss Halsall spend her money on the house.

We think the judgment is erroneous in so far as it subjects the Shepherds' interest in the whole tract to Miss Halsall's claim. She set up a claim to a small lot carved from the whole tract by virtue of her alleged oral agreement of purchase. She said that she had considered that she paid $200 for this lot—an adequate sum no doubt. If equitable relief is awarded Miss Halsall on another trial, it must go against the property which she claims was sold to her. Furthermore, she is not entitled to recover the full amount which she claims she expended, but rather, the rule is she will be entitled to recover the purchase money paid by her, if any, and also the amount by which the lot claimed by her has been enhanced in value by the improvements which she placed upon it while it was in her possession. Vogel v. Massey, supra. There must be proof, therefore, as to the value of the lot before the house was built and also as to the amount by which its value was enhanced by virtue of the improvements made. An allowance must be made

of course for the materials going into the house in the way of stone, logs and other lumber which came from the Steele and Shepherd land.

Wherefore, the judgment is reversed, except as to D. E. Steele, with directions to set it aside, and for proceedings consistent with this opinion.